IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

CLARENDON AMERICAN INSURANCE COMPANY,
    Plaintiff and
    Counter Defendant

-vs-                                          Case No. A-04-CA-563-SS

THE MOLPUS COMPANY d/b/a WOODLANDS
RESOURCE MANAGEMENT GROUP and MOLPUS
TIMBERLAND MANAGEMENT, L.L.C.,
    Defendants and
    Third Party Plaintiffs

-vs-

HCC GLOBAL FINANCIAL PRODUCTS
    Third Party Defendant

## ORDER

Before the Court are Counter-Plaintiffs' Motion for Partial Summary Judgment, filed June 2, 2005 [#37]; Motion of Third Party Defendant HCC Global Financial Products to Dismiss Third-Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) and Memorandum of Law in Support of Motion, filed June 16, 2005 [#39]; Plaintiff and Counter-Defendant Clarendon American Insurance Company's Memorandum in Opposition to Counter-Plaintiffs' Motion for Partial Summary Judgment, filed June 22, 2005 [#40]; Defendants' Opposition to HCC Global Financial Products, LLC's Motion to Dismiss, filed July 5, 2005 [#42]; Reply of Counter-Plaintiffs in Support of Their Partial Summary Judgment Motion, filed July 5, 2005 [#43]; Motion of Plaintiff and Counter-Defendant Clarendon American Insurance Company and Third Party Defendant HCC Global Financial Products LLC for Summary Judgment and Memorandum in Support Thereof, filed July 14, 2005 [#50]; Clarendon American Insurance Company's Surreply Brief in Further Opposition to Counter-Plaintiffs' Motion for Partial Summary Judgment, filed July 25, 2005 [#57]; and Defendants' Response to Clarendon and HCC's Motion for Summary Judgment, filed August 4, 2005 [#59].

Having considered the motion and response thereto, the case file as a whole and the applicable law, the Court enters the following opinion and orders.

## I. Background

Plaintiff Clarendon America Insurance Company ("Clarendon") filed this action against Defendants The Molpus Company d/b/a Woodland Resource Management Group ("Molpus") and Molpus' subsidiary, Molpus Timberlands Management, L.L.C. ("MTM"). Molpus and MTM subsequently filed counterclaims against Clarendon, as well as a third party complaint against HCC Global Financial Products ("HCC").

Clarendon issued a Directors, Officers and Organization Liability Insurance Policy covering Molpus and MTM for the September 1, 2000 to September 1, 2004 policy period (the "Policy"). The Policy provides "claims made" coverage, limited to losses resulting from claims first made during the policy period. (Molpus Mot. for Summ. Jt. App. F-H). HCC separately contracted with Clarendon to handle and adjust claims related to the Policy. (Third Party Compl. ¶ 48). The core issue involved in this lawsuit is the extent of coverage provided by the Policy.

Specifically, the question of insurance coverage arose from a lawsuit commenced in Texas state court in September 2003 (the "Suit"). The Suit was removed to this Court the following month and assigned cause number A-03-CA-705 SS, *The Molpus Company d/b/a Woodland Resource Management Group v. Cook Forestry Products, L.L.C.* By way of the Suit, Molpus asserted claims against Cook Forestry Products, L.L.C. ("Cook") for breach of contract. The contract, entered into in 1998, called for Molpus to provide timber management services to Cook for Cook's timber property in East Texas. Cook later asserted counterclaims in the Suit for fraud, negligent misrepresentation, breach of contract, breach of fiduciary duty and violation of the Texas Real Estate License Act.

Clarendon issued a preliminary coverage analysis to Molpus as to Cook's causes of action by letter dated January 8, 2004. Clarendon specifically denied coverage over any breach of contract claims, pursuant to an exclusion in the Policy. Clarendon also pointed to other exclusions, including ones for wilful statutory violations and criminal acts, as potentially limiting coverage for Cook's other causes of action. (Molpus Mot. for Summ. Jt. App. N).

Clarendon issued a supplement to the preliminary coverage analysis to Molpus by letter dated August 26, 2004. Clarendon reiterated its denial of coverage for any breach of contract claims. Citing a recent Court order issued in the Suit, Clarendon further concluded the exclusion extended to Cook's breach of fiduciary duty and negligent misrepresentation claims. Clarendon also restated its position that coverage was not available for Cook's claims of statutory fraud and violation of the Texas Real Estate License Act. (*Id.* App. M).

Clarendon participated in a mediation of the Suit on August 30, 2004. During the mediation Clarendon received a copy of a letter dated March 5, 1999 from Cook's Vice President, Mark W. Cook, to Molpus ("March 5 letter"). The March 5 letter identified a number of matters of concern connected to the timber property management agreement between Molpus and Cook. In the March 5 letter, Mark Cook states he is concerned with: (1) inaccuracies in the estimates of timber on the property, resulting "in a potential loss of over $2,000,000"; (2) loss of timber due to Molpus' failure to properly contain a beetle infestation; (3) failure of Molpus to prevent entry of unauthorized persons on the property; (4) Molpus' failure to meet various financial reporting obligations; and (5) Molpus' lack of adequate preparation of yearly appraisal documents required for loan financing which, when corrected, resulted in substantial savings to Cook. (*Id.* App. T). Mark Cook then continued:

> We consider each of the matters described above to be a material violation of your contract obligations to us. Accordingly, this letter is to serve as formal notice under Section 14(b) of the Management Agreement of your breach of the referenced material provisions of the Management Agreement, and our demand for corrective action by The Molpus Company with regard to each such breach. Without

limitation, this corrective action is to include the delivery to us of all financial and other reports which have been due since the commencement of the term of the Management Agreement; the payment to us of the full value of the timber which is determined to be "missing" from the property (calculated at $65 per ton in accordance with the Champion Agreement); and the reimbursement to us of the lost interest on the payment we have made to The Travelers, calculated from March 1, 1999 to the date that we receive our annual payment from Champion. In the event that these corrective actions have not been taken within thirty (30) days from the date hereof, we will pursue all remedies under the Management Agreement and as otherwise provided by law or in equity.

(*Id.* at 2-3).

Following the mediation, by letter dated September 1, 2004, Clarendon again supplemented its coverage analysis. (*Id.* App. P). Quoting extensively from the March 5 letter as support, Clarendon characterized the letter as constituting a Claim under the Policy. Clarendon further stated its belief that Cook's causes of action in the Suit and the March 5 letter arose "out of a series of related facts, circumstances, situations, transactions or events." (*Id.* at 2). Clarendon thus stated it considered the Cook Action to be a Claim which was first made, via the March 5 letter, before the inception of the Policy. Accordingly, Clarendon denied coverage for the Suit in its entirety. (*Id.* at 2). Clarendon filed this suit requesting a declaratory judgment concerning the extent of coverage under the Policy the same day.

Each of the parties has now filed a motion seeking resolution of all or part of this action. Third Party Defendant HCC has filed a motion to dismiss. As a preliminary matter, HCC contends all claims against it are governed by Mississippi law. HCC further argues dismissal of the third-party complaint is proper because: (1) it fails to state a claim under the Texas Insurance Code; (2) it fails to allege claims of misrepresentation or negligent misrepresentation with sufficient particularity; (3) an insured may not assert a claim of negligence against an insurer's claims handler; and (4) Third Party Plaintiffs are not entitled to exemplary damages.

Molpus and MTM have moved for partial summary judgment on their counterclaims. They contend the Policy covers the causes of action raised by Cook in the Suit and all of Clarendon's

4

defenses fail as a matter of law. Clarendon and HCC have also moved for summary judgment. They maintain: (1) they are entitled to a declaration the Policy does not cover the claims raised by Cook in the Suit; and (2) there is no basis in law or fact for the state law claims against them. The parties have filed responsive pleadings and the matters are now ripe for determination.

## II. Standard of Review

A motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted." *Lowrey v. Texas A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997) (quoting *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982)). The court must accept the factual allegations of the complaint as true, view them in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164, 113 S. Ct. 1160, 1161 (1993); *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 122 S. Ct. 992, 998 (2002). *See also Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957) (dismissal warranted only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief").

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 254, 106 S. Ct. 2505, 2513 (1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrates the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986). The burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-87, 106 S. Ct. 1348, 1355-56 (1986); *Wise v. E.I. Dupont de Nemours & Co.*, 58 F.3d 193, 195 (5th Cir. 1995). The non-movant must respond to the motion by setting forth particular facts indicating there is a genuine issue for trial. *Mississippi River Basin Alliance v. Westphal*, 230 F.3d 170, 174 (5th Cir. 2000). "After the non-movant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the non-movant, summary judgment will be granted." *Id.*

The parties may satisfy their respective burdens by tendering depositions, affidavits or other competent evidence. *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992). Unsubstantiated or conclusory assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

### III. Motion for Partial Summary Judgment by Counter Plaintiffs

Counter Plaintiffs Molpus and MTM have moved for a partial summary judgment declaring they are entitled to coverage under the Policy. Clarendon and, by extension, HCC oppose the motion, and seek a judgment in their favor on the matter. HCC and Clarendon also maintain the law of Mississippi applies to all claims at bar. The Court will address the threshold issue of choice of law first.

## A. Choice of Law

In diversity cases in which there is a dispute as to which state's law controls, federal courts apply the choice-of-law principles of the forum state, in this case Texas. *Erie R.R Co. v. Tompkins*, 304 U.S. 64, 58 S. Ct. 817 (1938); *Thomas v. N.A. Chase Manhattan Bank*, 994 F.2d 236, 241 (5th Cir. 1993). Texas courts use the "most significant relationship" test set forth in the Restatement (Second) of Conflict of Laws for all choice of law cases other than contract cases which include a valid choice of law contract provision. *Mayo v. Hartford Life Ins. Co.*, 354 F.3d 400, 403 (5th Cir. 2004) (citing *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 420- 21 (Tex. 1984)); *Askanase v. Fatjo*, 130 F.3d 657, 670-71 (5th Cir. 1997); *Minnesota Mining & Mfg. Co. v. Nishika, Ltd.*, 953 S.W.2d 733, 735-36 (Tex.1997).

HCC and Clarendon maintain Mississippi law applies to this dispute. They point out the issue of coverage is a matter of interpretation of the Policy, an insurance contract between Clarendon, Molpus and MTM. Clarendon is a New Jersey corporation, with its principal place of business in New York, and Molpus and MTM are both Mississippi companies with their principal place of business in Mississippi. According to Clarendon and HCC, because the Policy was intended to insure potential liability imposed against the officers of Molpus and MTM, Mississippi has the most significant relationship to this dispute.

Not surprisingly, Molpus and MTM disagree. They contend Texas bears a more significant relationship because HCC, MTM and Molpus all have a significant business presence in the state. Moreover, they note the Suit creating the coverage dispute was filed in Texas and concerned Texas timber property.

Significantly, each of the parties concede the case law of both Mississippi and Texas are not materially different as to basic contractual interpretation principles. Accordingly, the Court will apply the law of Texas as the forum state. *See Davis Oil Co. v. TS, Inc.*, 145 F.3d 305, 310 (5th Cir. 1998) (applying forum law without fear of conflict where all interested states' laws fairly similar);

*Nat'l Union Fire Ins. Co. v. CNA Ins. Cos.*, 28 F.3d 29, 32 (5th Cir. 1994) (applying substantive law of forum state because laws of various states involved did not conflict on any material issue); *W.R. Grace & Co. v. Cont'l Cas. Co.*, 896 F.2d 865, 874 (5th Cir. 1990) ("If the laws of the states do not conflict, then no choice-of-law analysis is necessary.").

## B. Contractual Interpretation

Clarendon requests this Court enter judgment declaring the Policy does not cover the counter claims asserted by Cook in the Suit. Under a "claims-made" policy such as the Policy, to invoke coverage, a claim must be made against the insured during the coverage period of the policy and the insured must notify the insurer of the claim during the same period. *Nat'l Union Fire Ins. Co. v. Willis*, 296 F.3d 336, 339 (5th Cir. 2002); *Matador Petroleum Corp. v. St. Paul Surplus Lines Ins. Co.*, 174 F.3d 653, 658-59 & n.2 (5th Cir. 1999). Thus, the core issue here is whether the Cook counter claims qualify under the Policy as a claim first made against Molpus and MTM during the period the policy was in effect.

Clarendon contends the Cook counter claims are not covered under the Policy because the March 5 constituted a demand upon Molpus made prior to the coverage period. According to Clarendon, under the Policy such a demand is considered a Claim. Clarendon further maintains the matters at issue in the March 5 demand were part of a series of facts and circumstances which led to the Cook counter claims. Clarendon concludes the counter claims are based on a series of events and circumstance related to the original demand/Claim asserted in the March 5 letter, and are thus not covered because they were first made before the inception of the Policy. Molpus and MTM contend a more reasonable reading of the ambiguous language in the Policy would provide them with coverage for the counter claims.

When interpreting an insurance policy under Texas law, a court must construe ambiguities against the insurer and in favor of the insured. *Willis*, 296 F.3d at 339. The primary goal is to give effect to the written expression of the parties' intent. *Id.* This is necessary to ensure the

8

interpretation of the policy will give effect to each term in the contract, so that none will be rendered meaningless. *Id.* An insurance policy is considered ambiguous if, when considered as a whole, it is reasonably susceptible to more than one meaning. *Matador*, 174 F.3d at 657 (5th Cir. 1999); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994).

The key provisions of the Policy include Provision B of the Insuring Agreements portion of the Policy, which provides: "The Insurer will pay to or on behalf of the Insured Organization Loss arising from Claims first made against it during the Policy Period or Discovery Period (if applicable) for Wrongful Acts." (Molpus Mot. for Summ. Jt. App. F at 2). Under Definition B the Policy defines a "Claim" as including "any written demand, oral demand or demands for non-monetary relief." (*Id.*). As to the interrelationship of Claims, Condition C provides:

> All Claims alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions, or events or to a series of related facts, circumstances, situations, transactions or events will be considered to be a single Claim and will be considered to have been made at the time the earliest such Claim was made.

(*Id.* at 11). Finally, Exclusion (P) states the Insurer is not liable for any Loss in connection with a Claim "arising out of any actual or alleged breach of contract or agreement." (*Id.* at 9).

The gravamen of this dispute is whether the March 5 letter from Cook to Molpus constitutes a Claim made prior to the Policy period. Clarendon argues the letter qualifies as such, and further maintains the counter claims asserted by Cook in the Suit arose from the same or related facts or circumstances. Clarendon thus concludes the Policy does not cover the consequent liability to Molpus and MTM. Molpus and MTM disagree, for a number of reasons.

First, Molpus and MTM argue the language in Condition C does not apply to the March 5 letter because it does not apply to any pre-policy "claims." According to their reading of the Policy, the use of the lower case "claim" versus the capitalized "Claim" makes a clear distinction based on the time of assertion. They cite two pieces of language in support. First, Molpus and MTM point to the use of the work "claim" in the application form as clearly referencing claims made prior to

9

issuance of the policy. The Court, however, declines to find significant probative value concerning interpretation of contract terms in the parties' use of words in documents other than the contract itself. This is especially true in this instance where "Claim" is a term specifically defined in the Policy.

Molpus and MTM also look to Exclusion H of the Policy which excludes coverage for a "Claim"

> arising out of, based upon or attributable to facts or circumstances alleged, or to the same or related Wrongful Acts alleged or contained, in any claim which has been reported, or with respect to which any notice has been given, under any policy of which this Policy is a renewal or replacement or which it may succeed in time

(*Id.* at 7). They argue the lower case usage here is clearly a reference to events prior to the Policy period. The Court does not disagree. However, this reference similarly non-dispositive because the use of lower case "claim" is clearly meant to refer to "claims" made under other policies. As such, use of the defined term "Claim" would be inappropriate.

Moreover, the fatal blow to this argument is dealt by the language of one of the first provisions in the Policy, Insuring Agreement B. As quoted above, this provision limits coverage to Claims "first made" during the Policy Period. If, as Molpus and MTM contend, the term "Claim" applies only to demands made during the Policy Period, there would be no need to include the modifying language "first made" in Insuring Agreement B. The view of Molpus and MTM is not a reasonable reading of the contractual provisions and the Court declines to adopt it.

Molpus and MTM further argue Clarendon waived its right to exclude coverage for pre-policy claims which ripened into Claims during the Policy Period. In support, they point to Clarendon's failure to require an answer to a question in the policy application regarding the potential insured's knowledge of any existing circumstances "which it has reason to believe might result in a claim being made." (Molpus Mot. for Summ. Jt. App. I at CL02366). According to Molpus and MTM,

because Clarendon did not require them to disclose pre-policy claims, it has now waived any right to exclude such claims from coverage.

This argument fails for several reasons. First, it depends on the distinction Molpus and MTM attempt to draw between "Claims" and pre-policy claims. The Court has already rejected this view of the Policy. Second, as a claims-made policy, the Policy applies only to claims first made during the policy period. Whether claims which arose or were made prior to issuance of the policy were disclosed to Clarendon or not, pre-policy claims are clearly not covered.

Molpus and MTM next contend Clarendon's reading of the Policy improperly transforms Condition C into an exclusion. They maintain because no exclusionary language is included in Condition C, it cannot be read to exclude coverage. This argument mischaracterizes the use of Condition C by Clarendon. As noted above, Condition C speaks to the interrelationship of Claims, stating Claims arising out of the same factual circumstances are considered to be a single Claim made at the time the earliest Claim was made. Condition C does not, however, address the circumstances under which such interrelated claims are covered or excluded from coverage. Accordingly, the Condition does not act as an exclusion. *See Med. Care Am., Inc. v. Nat'l Union Fire Ins. Co.*, 341 F.3d 415, 424 (5th Cir. 2003) (application of insurance policy definition did not preclude operation of exclusions).

Molpus and MTM also maintain Clarendon's reading of the Policy is unreasonable and contrary to coverage principles requiring interpretation in favor of the insured. In support, they reiterate the arguments offered above, and proffer several others. Having already rejected the repeated arguments, the Court need not address them again and will turn to the newly raised arguments.

By way of their new arguments, Molpus and MTM contend Clarendon's interpretation of the term Claim to include pre-policy claims would render a number of other Policy provisions superfluous. First, they point to Exclusion I which excludes coverage for a "Claim"

11

arising out of, based upon or attributable to any pending or prior litigation as of the inception date of this Policy, or alleging or derived from the same or essentially the same facts or circumstances as alleged in such pending or prior litigation

(Molpus Mot. for Summ. Jt. App. F at 7). According to Molpus and MTM, if Clarendon is correct in reading Claim as including pre-policy claims, this exclusion is unnecessary. However, as the Court will more fully address below, the term Claim is specifically defined to include only a demand or proceeding "to the extent that it seeks monetary relief." (*Id.* at 3). Thus, Exclusion I has clear application in situations involving pending or prior litigation seeking injunctive or declaratory relief. It is not, therefore, rendered superfluous by Clarendon's reading of the term Claim.

Second, Molpus and MTM point to Conditions B(2) and B(3) as unnecessary if Clarendon's interpretation is correct. Those two conditions address the notice and reporting requirements placed on the insured and provide:

> (2) If written notice of a Claim has been given to the Insurer pursuant to CONDITION (B)(1) above, then any Claim subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to the facts alleged in the Claim of which such notice has been given, or alleging any Wrongful Act which is the same as or related to any Wrongful Act in the Claim of which such notice has been given, will be considered to have been made at the time such notice was given.

> (3) If, during the Policy Period or the Discovery Period (if applicable), the Insureds become aware of any circumstance which may reasonably be expected to give rise to a Claim against the Insureds and if, before the end of the Policy Period or the Discovery Period (if applicable), the Insureds give written notice to the Insurer of the circumstances and the reasons for anticipating such a Claim, with full particulars as to dates, persons and entities involved, potential claimants and the consequences which may have resulted or may result from such Wrongful Act, than any Claim subsequently made against the Insureds and reported to the Insurer alleging, arising out of, based upon or attributable to such circumstances or alleging any Wrongful Act which is the same as or related to any Wrongful Act described in such notice will be considered to have been made at the time such notice of circumstances was given.

(*Id.* at 11). Molpus and MTM contend the language in Condition C, deeming subsequent Claims which relate to Claims earlier asserted as first made at the time the original Claim was made, is duplicative of the language in these two provisions.

12

The Court disagrees. Condition B(2) clearly speaks to the necessity, or lack thereof, of notice to establish coverage for subsequent related Claims. Although it includes language similar to Condition C concerning the relatedness of Claims, the clear focus of this condition is notice. Condition B(3) is similarly focused on notice, rather than interrelationship of Claims. Moreover, Condition B(3) deals with situations in which an Insured chooses to notify the Insurer of events which might lead to a Claim. As such, it is distinct from, rather than superfluous of, Condition C.

Third, Molpus and MTM claim Clarendon's interpretation of the Policy is contrary to language at the end of the list of Exclusions. Specifically, they claim Clarendon's treatment of Condition C as an exclusion contradicts the Policy language prohibiting imputation of the conduct of any insured, in this case Molpus, to any other insured, i.e. MTM, "to determine the application of any of the above EXCLUSIONS." (*Id.* at 9). However, as the Court has already concluded Clarendon is not treating Condition C as an exclusion, this language is not implicated.

Molpus and MTM also argue, even if pre-policy claims qualify as Claims under the Policy, the March 5 letter did not qualify as a Claim for a number of reasons. First, according to their summary judgment motion, the letter was not a demand because it sought corrective action, not monetary relief. The terms of the letter itself clearly rebuts this position. Namely, the letter asserts Cook's "demand for corrective action" and further states the corrective action is to include

> the payment to us of the full value of the timber which is determined to be "missing" from the property (calculated at $65 per ton in accordance with the Champion Agreement); and the reimbursement to us of the lost interest on the payment we have made to The Travelers, calculated from March 1, 1999 to the date that we receive our annual payment from Champion.

(Molpus Mot. for Summ. Jt. App. T at 3). There is no question Cook was seeking monetary relief by way of the March 5 letter.

Second, Molpus and MTM contend the only references to money deal with potential and uncertain claims, not actual demands. This argument is also rebutted by the clear language of the letter. Even if the monetary amount at issue with the "missing" timber is somewhat uncertain, the

13

demand for reimbursement of lost interest asserts a clear and certain right to money damages. Moreover, as Clarendon points out, Molpus' own pleadings in the underlying Suit characterized the "missing" timber reference in the letter as a "demand" by which "Mark Cook was requesting Molpus to pay it $2.275 million dollars to make up for the loss Cook believed it had suffered based on the timber shortfall." (Clarendon Resp. Ex. 2).

Third, Molpus and MTM suggest because the concerns raised in the March 5 letter were fully satisfied, the requests did not rise to the level of a demand. Subsequent satisfaction of a demand does not, however, retroactively convert the demand to something else. Indeed, under Molpus' logic, a demand which resulted in the actual payment of money would not constitute a Claim potentially covered under the Policy. Sucha a reading is, therefore, unreasonable.

Fourth, Molpus and MTM maintain Cook's subsequent actions clearly indicate even Cook did not know it had claims against them. As support, they rely on Cook's filing in Texas district court in April 2003 of a Petition for Rule 202 Depositions "to investigate potential claims against the Molpus Respondents" with suit to follow if Cook discovered the Molpus Respondents had breached any fiduciary duties. (Molpus Mot. for Summ. Jt. App. W at 6). This argument, however, relies on viewing Cook's use of the term "claim" in the Petition, as synonymous with the term "Claim" as defined in the Policy. Here, the question is whether the March 5 letter constituted a demand, not whether Cook believed it had a legally viable claim against Molpus and MTM.

Fifth, Molpus and MTM argue this Court has previously found the March 5 letter did not constitute notice to Cook of the counter claims. They cite the Court's order denying Molpus' partial summary judgment motion on limitations in the underlying Suit which states "the record does not establish as a matter of law the date by which Cook discovered or should have discovered its wrongful injury." (Molpus Mot. for Summ. Jt. App. D at 31 n.18). Molpus and MTM characterize the Court's statement as holding the letter did not constitute notice of an injury. They conclude the letter clearly does not, therefore, rise to the level of a demand for monetary relief.

14

The Court disagrees. The statement merely concludes, based on the entire summary judgment record in the Suit, including evidence of subsequent events, there was a material fact issue preventing a determination on limitations as a matter of law. It does not constitute a legal finding concerning an issue not presented, whether the March 5 letter was a demand by Cook.

Molpus and MTM also argue, by way of their reply, the March 5 letter is not a Claim because the definition of Claim in the Policy is inherently ambiguous. According to them, because the phrase "any written demand, oral demand or demands for non-monetary relief" does not include a comma after oral demand, "non-monetary relief" modifies the entire list. Thus, Molpus and MTM maintain only demands for non-monetary relief are included in this definition. They assert this reading is rendered clearly ambiguous by the later language of the definition which states a demand is a "Claim only if and to the extent that it seeks monetary relief." (Molpus Mot. for Summ. Jt. App. F at 3).

As Clarendon points out, however, this argument is in clear contradiction to Molpus' and MTM's prior contention that the March 5 letter is not a Claim precisely because it does not seek monetary relief. Moreover, Molpus and MTM raised this argument for the first time in their reply brief. These reasons alone are sufficient to deny any relief on this basis. *See Springs Indus., Inc. v. Am. Motorists Ins. Co.*, 137 F.R.D. 238, 239 (N.D. Tex. 1991) (noting court's practice of declining to consider arguments raised for first time in reply brief). Further, even if rendered grammatically suspect by the lack of a comma, the phrase "any written demand, oral demand or demands for non-monetary relief" is not reasonably susceptible to the reading proffered by Molpus and MTM. A far more reasonable interpretation is that the inclusion of the modifier "non-monetary" in the second half of the phrase creates a clear implication the first half of the phrase refers to monetary relief. Accordingly, the Court declines to adopt the reading of Molpus and MTM. *See L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 110-11 (5th Cir. 1994) (reading of contract term leading to impractical or commercially absurd results is unreasonable).

15

Molpus and MTM further argue, by way of their reply, Clarendon has misconstrued the meaning of the words "relief" and "seeks" in the definition of Claim. According to their citation of a number of dictionaries, "relief" necessarily includes only redress available in a court. Molpus and MTM also assert "seeks" has only a present tense meaning, and thus does not include requests which may be satisfied in the future.

The Court notes these arguments could also be dismissed as untimely raised. Further, as the Fifth Circuit has noted "if every word for which secondary and tertiary meanings are to be found in some English language dictionary is deemed to be ambiguous" essentially every non-technical word "would have the potential of being ambiguous." *Miss. Poultry Ass'n, Inc. v. Madigan*, 9 F.3d 1113, 1115 (5th Cir. 1993). Thus, we leave it to "[d]ictionaries [to] define words in the abstract, while courts must determine the meaning of terms in a particular context, here a specific insurance policy." *Gulf Metals Indus., Inc. v. Chicago Ins. Co.*, 993 S.W.2d 800, 806 (Tex. App.–Austin1999, pet. denied). In addition to defining "Claim" as meaning a demand seeking monetary relief, the Policy also defines Claim to include civil proceedings, arbitrations, mediations and administrative and regulatory proceedings. (Molpus Mot. for Summ. Jt. App. F at 2-3). Given this context, "relief" is clearly intended to have a broader meaning than simply relief available in a court.

For much the same reason, the argument concerning the meaning of "seeks" is unavailing. Although the letter did state a future intent to pursue legal remedies, it clearly asserted a present tense demand for monetary relief. Because the Court has found relief to include "relief" found outside of legal proceedings, the letter "seeks" monetary relief and thus constitutes a Claim.

Molpus and MTM next assert they are entitled to coverage because the counter claims asserted by Cook in the Suit are broader than the issues raised in the March 5 letter. They point out the March 5 letter is limited to issues concerning the first timber property acquired by Cook and managed by Molpus, Lufkin I. The counter claims, however, addressed both Lufkin I and two subsequently acquired properties, Lufkin II and Lufkin III. Molpus and MTM further contend the

counter claims were based on alleged misrepresentations made subsequent to, and concerning purported management improprieties other than, those raised in the March 5 letter.

Nothing in the Policy, however, requires strict identity between the original Claim and subsequent issues for the subsequent issues to relate back to the original Claim. Rather, the Policy treats as a single Claim "[a]ll Claims alleging, arising out of, based upon or attributable to the same facts, circumstances, situations, transactions, or events or to a series of related facts, circumstances, situations, transactions or events." (Molpus Mot. for Summ. Jt. App. F at 11). It is apparent Molpus, MTM and Cook were involved in a long-term relationship involving the management of several timber properties in close geographic proximity. A review of the pleadings filed by Cook in the Suit clearly reveals the focus of the counter claims was the validity of the timber forecasts on the properties, the representations made by Molpus and MTM concerning those forecasts, and the financial effects caused by the eventual discovery of the invalidity of the forecasts. The inescapable conclusion is the counter claims arise out of, are based upon, or are attributable to, a series of facts, circumstances, situations, transactions or events related to the March 5 letter. *See TRI Core Inc. v. Northland Ins. Co.*, 2002 WL 31548754, at *5 (N.D. Tex. Nov. 12, 2002) (concluding issues raised in three lawsuits relate to same "wrongful acts" where factual allegations and legal theories substantially the same); *LaValley v. Virginia Sur. Co., Inc.*, 85 F. Supp. 2d 740, 747 (N.D. Ohio 2000) (two cases clearly arising from same general circumstances, namely, party's relationship with shareholders in his company, constituted single claim even though parties were somewhat different, and claims did not perfectly overlap, any other conclusion would result in exclusion of claim only if it were based on an identical lawsuit or were the subject of an identical prior notice).

MTM further maintains the March 5 letter cannot be read as a demand against it and thus cannot be used to exclude coverage against it. This argument ignores the focus of the Policy language on claims. It is the nature of the claim asserted which triggers the exclusionary language

17

in the Policy. Here, the Court has already concluded the March 5 letter constituted a demand which qualified as a Claim under the Policy. Thus, because this Claim was initially made prior to the inception of the Policy, the related counter claims subsequently asserted by Cook are excluded from coverage. *See Zunenshine v. Executive Risk Indem., Inc.*, 1998 WL 483475, at *5 (S.D.N.Y. Aug. 17, 1998) (nothing in policy mandates claim must involve precisely the same parties, legal theories, wrongful acts, or requests for relief for exclusions to apply). As all of the arguments raised by Molpus and MTM fail, Clarendon is entitled to judgment declaring the Policy does not extend coverage for the counter claims raised by Cook in the Suit.

Clarendon also contends Molpus and MTM are not entitled to coverage because they made misrepresentations in the application process regarding the existence of prior claims. Clarendon further claims Exclusion P, excluding liability for claims "arising out of" an alleged breach of contract, applies to exclude coverage for Cook's counter claims. Because the Court has already concluded Clarendon is not liable for coverage under the Policy for the reasons stated above, consideration of these arguments is unnecessary.

### IV. Motion to Dismiss Third Party Complaint

Third Party Defendant HCC has moved to dismiss the Third-Party Complaint for failure to state an actionable claim. By way of the Third Party Complaint Molpus and MTM assert claims against HCC for violations of the Texas Insurance Code, misrepresentation and negligent misrepresentation, as well as for exemplary and punitive damages. These claims are asserted against HCC as claims manager for Clarendon and are all based on allegations HCC engaged in improper conduct in the course of denying coverage for Molpus and MTM. Because the Court has concluded the Cook counter claims are not covered under the Policy, all of these extracontractual claims must fail. *See Liberty Nat. Fire Ins. Co. v. Akin*, 927 S.W.2d 627, 629 (Tex. 1996) (insured generally may not prevail on bad faith claim without first showing insurer breached the contract);

*Republic Ins. Co. v. Stoker*, 903 S.W.2d 338, 341 (Tex. 1995) (general rule is there can be no claim for bad faith when insurer has promptly denied claim that is in fact not covered).

### V. Motion for Partial Summary Judgment by Plaintiff, Counter Defendant and Third Party Defendant

Clarendon and HCC have also moved for summary judgment on all of the extracontractual claims raised by Molpus and MTM. As noted above, because all of these extracontractual claims rest on allegations of improper claims handling under the Policy, the grant of summary judgment to Clarendon renders those claims without basis.

Accordingly, Clarendon and HCC are entitled to summary judgment on all claims against them.

In accordance with the foregoing:

IT IS ORDERED that Counter-Plaintiffs' Motion for Partial Summary Judgment [#37] is DENIED;

IT IS FURTHER ORDERED that the Motion of Third Party Defendant HCC Global Financial Products to Dismiss Third-Party Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [#39] is DISMISSED AS MOOT;

IT IS FURTHER ORDERED that the Motion of Plaintiff and Counter-Defendant Clarendon American Insurance Company and Third Party Defendant HCC Global Financial Products LLC for Summary Judgment [#50] is GRANTED.

SIGNED this the 8th day of August 2005.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE